## Case No. 16,845.
### VANDERWICK v. SUMMERL.
[2 Wash. C. C. 41.] [1]

Circuit Court, D. Pennsylvania. April Term, 1807.

ACCOUNTING IN EQUITY—REFERENCE TO MASTER— EXCEPTIONS TO REPORT.

1. Where money belonging to A and C, arising out of a joint transaction between him and C, has, with the knowledge by B of the interest of A in the same, been placed by the agent of A and C to the credit of B and C, who are partners, and C is indebted to his partner B: B cannot apply the money of A to the credit of C, in satisfaction of his claim upon him.

[Cited in Re Ketchum, 1 Fed. 827.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. The court observed that where accounts were referred to a master, they would not settle principles previous to taking an account; but they must be brought before them on exceptions.

[Cited in Lull v. Clark, 20 Fed. 455.]

This bill was brought for an account, and amongst other items there was one for the plaintiff's interest in the cargo of a vessel, the Mary Ann, owned and managed by Brown, and shipped on his and the plaintiff's account, before he became a partner with the defendant; but the proceeds of which came to the hands of Brown & Summerl, after their partnership, and with full notice to Summerl of the plaintiff's interest therein. The case, as it appeared from the accounts rendered, from the correspondence, and from parol evidence, was shortly this: Certain commercial transactions had taken place between the complainant, living at St. Domingo, and Israel Brown, a resident of Philadelphia, amongst which was a shipment of flour, made by the latter on the joint account of himself and the complainant, in a vessel belonging to the complainant, to the Island of Martinique; just previous to the capture of that island by the English. Before the vessel sailed with her return cargo, the island was taken, and the vessel and cargo libelled and condemned. From this sentence an appeal was entered, and restitution was awarded by the court of admiralty in England. Brown, not satisfied with simple restitution, laid his claim for damages before the commissioners acting under the British treaty, who awarded a certain sum to be paid by the government on that account. In 1794, the defendant and Brown entered into partnership, and there was strong evidence to induce a belief that the defendant was perfectly acquainted with the interest of the plaintiff in the cargo of the Mary Ann, and consequently that he was entitled to such a proportion of the money and damages, to be paid in England, as his proportion of the cargo. In 1802, and afterwards, the money on account of the Mary Ann was received, and at different times remitted by Kowan, the agent in England, or placed by him to the credit of Summerl & Brown; which sums were placed to the credit of Brown, on the books of Summerl & Brown. Brown afterwards died insolvent.

The single question was, whether in the accounts to be settled between these parties, any part of the proceeds of the cargo of the Mary Ann, ought to be debited to the defendant. It was contended by Mr. Levy, for the defendant, they ought not. Brown was the only receiver of the money. He was largely indebted to the defendant, as appears by the evidence; and if he took the plaintiff's money to pay his individual debts, the plaintiff cannot follow it into the hands of the defendant, but must look to the estate of Brown; or if that be insolvent, as is admitted, it is the complainant's misfortune.

For the plaintiff, it was said, had Brown alone received the money, and with it paid a debt to the defendant, or used it for the joint concern, the money could not be specifically followed, nor could there exist any implied contract between plaintiff and defendant. But the money came to, and was received by Summerl & Brown jointly, the defendant knowing that he was receiving the money of the plaintiff. This created a contract in Summerl & Brown to pay the plaintiff his proportion, from which the defendant is not discharged by the book operation of placing the whole to the credit of Brown, in the books of Summerl & Brown.

THE COURT ordered an account to be settled by the commissioners of the court, with directions to credit the plaintiff with his proportion of all moneys received on account of the cargo of the Mary Ann for restitution, and from the government of England.